# Exhibit 3

Craig Solomon Ganz, Cal. Bar No. 217254
*ganzc@ballardspahr.com*
Michael S. Myers, Cal. Bar No. 305011
*myersm@ballardspahr.com*
Elliot G. Johnson, Cal. Bar No. 317303
*johnsoneg@ballardspahr.com*
Mitchell L. Turbenson, Cal. Bar No. 346024
*turbensonm@ballardspahr.com*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Tel:  424.204.4400 | Fax:  424.204.4350

Attorneys for Plaintiff
WESTERN ALLIANCE BANK

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/24/2025 4:13 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By T. Alexander, Deputy Clerk

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| WESTERN ALLIANCE BANK, an Arizona Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CANTOR GROUP V, LLC, a Delaware Limited Liability Company, GERALD J. MARCIL, an individual, and ANDREW STUPIN, an individual,<br><br>Defendants. | CASE NO. 25STCV24263<br><br>[Judge Cherol J. Nellon, Dept. 14]<br><br>**PLAINTIFF WESTERN ALLIANCE BANK'S NOTICE AND MOTION FOR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[TO BE HEARD AND DECIDED BY THE JUDICIAL REFEREE PURSUANT TO CCP §§ 638–645.1]**<br><br>**Date: April 20, 2026**<br>**Time: 8:30 A.M.**<br>**Dept.: 14 (Judicial Reference)**<br>**Reservation ID: 379684533426**<br><br>Action Filed:    August 18, 2025<br>Trial Date:      None Set<br><br>[*Concurrently filed with Separate Statement of Undisputed Material Facts; Declaration of Al Thuma; Declaration of Eric Lee; Declaration of Craig S. Ganz; Request for Judicial Notice*] |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that this Motion for Summary Adjudication filed by Plaintiff Western Alliance Bank, an Arizona Corporation ("Plaintiff") is filed for hearing and decision by the judicial referee to be appointed pursuant to the Parties' contractual judicial reference agreement and California Code of Civil Procedure §§ 638–645.1. Plaintiff has initiated discussions with Defendants Cantor Group V, LLC ("Borrower"), Gerald J. Marcil, and Andrew Stupin (collectively, "Defendants") to effectuate the judicial reference provision and to appoint a referee. If necessary, Plaintiff will separately file a motion to enforce the judicial reference agreement. Plaintiff does not request that the Court adjudicate the merits of this Motion unless and until the Court denies enforcement of the judicial reference agreement or otherwise directs that the Motion be heard by the Court.

This Motion seeks summary adjudication solely to Plaintiff's causes of action for breach of contract against Borrower and breach of guaranty against Defendants Marcil and Stupin, including adjudication that Defendants are liable for the unpaid principal balance of $98,643,500.00, together with accrued and accruing contractual interest as provided in the Loan Documents.

This Motion is made on the grounds that there are no triable issues of material fact and that Plaintiff is entitled to summary adjudication as a matter of law that: (a) Borrower breached the Loan Agreement and Note; and (b) Marcil and Stupin breached their respective Guaranties. This Motion is made pursuant to CCP §§ 437c(a) and (f) and is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Separate Statement of Undisputed Material Facts; the Declarations of Al Thuma, Eric Lee, and Craig S. Ganz and exhibits submitted in support thereof; all pleadings and papers on file in this action; and such other and further evidence and argument as may be presented at or before the hearing on this Motion.

**Plaintiff has reserved a hearing date of April 20, 2026 in Department 14 located at the Stanley Mosk Courthouse, 111 N. Hill Street, Los Angeles, CA 90012 at 8:30 a.m. because it could otherwise not file this Motion. Plaintiff in no way is waiving its right to judicial reference.**

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

DATED:  December 24, 2025

**BALLARD SPAHR LLP**

By:    */s/ Mitchell L. Turbenson*
        Craig Solomon Ganz
        Michael S. Myers
        Elliot G. Johnson
        Mitchell L. Turbenson

        *Attorneys for Plaintiff*
        *Western Alliance Bank*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS.......................................................................................1

    **A.** Plaintiff Lends Borrower $98,643,500.00 Subject To The Terms Of The Loan Documents ...........................................................................................1

    **B.** The Guaranty Agreements and Scope of the Guarantors' Obligations ...................3

    **C.** Borrower's Fraud, Misappropriation, and Collateral-Impairment Conduct Triggers the Guarantors' "Additional Guaranteed Obligations"...........................5

        1. Borrower supplied altered title policies falsely showing first-priority liens. ..............................................................................................5

        2. Borrower concealed foreclosure and bankruptcy proceedings while reaffirming "no proceeding" representations. .............................................7

        3. Borrower diverted and misappropriated collateral-related proceeds. .........9

        4. Borrower falsely certified compliance while withholding required financial, collateral, and loan-level information. .......................................9

        5. Borrower failed to make required monthly debt service payments...........10

        6. Guarantors Had Notice of Borrower's Defaults and Acknowledged Their Continuing Guaranty Obligations.....................................................11

        7. The Court Appoints a Receiver Over the Collateral Loans Based on Borrower's Defaults. .................................................................................12

III. LEGAL STANDARD ...........................................................................................12

IV. THE UNDISPUTED MATERIAL FACTS ESTABLISH PLAINTIFF'S ENTITLEMENT TO SUMMARY ADJUDICATION FOR BREACH OF CONTRACT AND BREACH OF GUARANTY. ..............................................................12

    **A.** Borrower Materially Breached the Loan Documents, Resulting in Defaults and Damages. ..........................................................................................13

        1. Borrower's material misrepresentations and non-disclosures are breaches and Events of Default with no cure period................................13

        2. Borrower breached fundamental proceeds-control and reporting covenants that exist to protect collateral integrity...................................14

        3. Borrower diverted collateral-related funds and depleted required liquidity, further impairing Plaintiff's security. .......................................16

        4. Borrower failed to make required monthly debt service payments, resulting in continuing payment default..................................................16

        5. These breaches caused ongoing harm and entitle Plaintiff to judgment on its contract claim. ................................................................17

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

**B.** The Guarantors Are Liable for Borrower's Defaults and for the Uncapped "Additional Guaranteed Obligations" Triggered by Borrower's Fraud and Misconduct. ...........................................................................................................17

    1. The Guaranties obligate Guarantors to pay on demand, independent of Plaintiff's pursuit of Borrower or collateral.............................................18

    2. Borrower's payment and covenant defaults trigger the Guarantors' percentage liability for the "Credit." ........................................................18

    3. Borrower's fraud, misappropriation, and collateral-impairment conduct triggers the Guarantors' uncapped "Additional Guaranteed Obligations." ....................................................................................................19

    4. The Guaranties are enforceable as written, and the Guarantors' obligations are absolute, independent, and subject to comprehensive waiver. .................................................................................................................19

V. CONCLUSION ...................................................................................................................20

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Beverly Hills Nat'l Bank v. Glynn*
(1968) 267 Cal. App. 2d 859 .............................................................................................. 12

*In re Global Premier Regency Palms Oxnard, LP*,
Case No. 9:25-bk-10329-RC (C.D. Cal. Bankr.) ................................................................... 8

*Goldstein v. Hoffman*
(1963) 213 Cal.App.2d 803 ................................................................................................ 12

*Gray1 CPB LLC v. Kolokotronis*
(2011) 202 Cal. App. 4th 480............................................................................................. 17

*Series AGI W. Linn of Appian Grp. Investors DE, LLC v. Eves*
(2013) 217 Cal. App. 4th 156........................................................................................ 19, 20

*Wall Street Network, Ltd. v. New York Times Co.*
(2008) 164 Cal. App. 4th 1171 .......................................................................................... 12

**Statutes**

Cal. Civ. Code § 1614 ............................................................................................................. 12

Cal. Civ. Code § 1638 ............................................................................................................. 20

Cal. Civ. Code §§ 2787-2855 ................................................................................................... 4

Cal. Code Civ. Proc. § 437c .................................................................................................... 12

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

This Motion applies written loan and guaranty contracts to undisputed facts. Plaintiff Western Alliance Bank ("Plaintiff" or "Lender") funded a $98,643,500.00 warehouse facility in reliance on Defendant Cantor Group V, LLC's ("Cantor" or "Borrower") representations that the pledged collateral was secured by valid, perfected first-priority liens and supported by accurate title and loan-level documentation. The undisputed record shows Borrower delivered conflicting title materials, concealed superior liens and foreclosure activity, diverted required liquidity, withheld mandated reporting, and then stopped making monthly debt service payments. These multiple, independent breaches constitute continuing Events of Default, leaving the $98,643,500.00 principal balance unpaid.

Defendants Gerald Marcil and Andrew Stupin (each, a "Guarantor") executed separate, unconditional guaranties of payment enforceable immediately and without exhaustion of remedies. Although the Guaranties include percentage-based obligations, they also impose independent, uncapped liability for "Additional Guaranteed Obligations," including losses arising from Borrower's fraud, misappropriation of collateral proceeds, and failure to deliver first-priority security interests. Those obligations are triggered here, rendering each Guarantor jointly and severally liable for the full indebtedness and enforcement costs.

## II.  STATEMENT OF FACTS

### A.  <u>Plaintiff Lends Borrower $98,643,500.00 Subject To The Terms Of The Loan Documents</u>

On February 14, 2022, Plaintiff extended a revolving warehouse credit facility to Borrower with an original maximum principal amount of $100,000,000. (Plaintiff's Statement of Separate Facts ("SOF") ¶ 1). As of October 2022, Plaintiff had lent Borrower at least $98,643,500.00. (SOF ¶ 2). On October 28, 2024, Plaintiff and Borrower entered into a Second Amended and Restated Business Loan and Security Agreement (as amended, the "Loan Agreement"). (SOF ¶ 3). The facility was designed as a collateral-driven warehouse loan, under which Borrower originated or acquired mortgage loans to third parties (the "Collateral Loans"), pledged those loans and their

1

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

proceeds to Plaintiff, and represented that Plaintiff would hold a valid, perfected first-priority lien position in the underlying collateral at all times. (SOF ¶ 4).

The Loan Agreement required strict compliance with first-lien representations and title insurance delivery, because the value of the collateral, and the repayment of the Loan, depended entirely on the truthfulness of Borrower's disclosures. (SOF ¶ 5). Among other things, Borrower expressly warranted that:

- Each Collateral Loan was secured by a valid, perfected first-priority mortgage on the underlying real property;
- No other liens or encumbrances of any kind existed on any Collateral Loan or any interest in it;
- No pending or threatened action or proceeding existed that could materially and adversely affect any Collateral Loan; and
- All information and disclosures provided to induce Lender to make the Loan were true, complete, and not misleading, with any material misrepresentation or omission constituting an immediate, incurable breach.

(SOF ¶ 5).

The Loan Agreement further reflected Borrower's representations that final title insurance confirmed first-priority lien status, that collections and proceeds flowed through lender-controlled accounts, that Borrower maintained required liquidity levels, and that Borrower provided accurate and complete financial and loan-level information sufficient for Plaintiff to monitor the integrity of its collateral. (SOF ¶ 6). Critically, the Loan Agreement provides that any material misrepresentation or failure to disclose a material fact made to induce the Loan, and any resulting material breach of the Agreement, gives rise to an Event of Default for which Borrower is not entitled to any cure period, and upon which Lender may immediately exercise its contractual enforcement remedies. (SOF ¶ 7). These remedies include acceleration of the Loan, seizure and control of collateral and proceeds, and enforcement against guarantors without exhaustion of remedies. (SOF ¶ 8). Under the Loan Documents, the accelerated indebtedness bears interest at the rate stated in the Note. (SOF ¶ 9).

In the First Amendment to the Loan Agreement dated July 18, 2025, Borrower and the Guarantors ratified and reaffirmed the Loan Agreement and all other Loan Documents, confirmed that each remained in full force and effect, and acknowledged that no defenses, offsets,

2

counterclaims, or claims existed that would impair Plaintiff's enforcement rights. (SOF ¶ 10). The First Amendment also added express provisions requiring Borrower to deposit and continuously maintain all Collateral Loan–related accounts and proceeds in a Plaintiff-controlled capital account. (SOF ¶ 11).

### B.    The Guaranty Agreements and Scope of the Guarantors' Obligations

"In order to induce Lender to extend Credit to Borrower," Guarantors each executed an Amended and Restated Commercial Guaranty dated October 28, 2024 (the "Guaranties"). (SOF ¶ 12). The Guaranties define "Credit" in "its most comprehensive sense" to include "any and all loans, advances, debts, obligations, and liabilities of any kind or nature owed by Borrower to Lender . . . whether due or not due, absolute or contingent, liquidated or unliquidated, secured or unsecured, and whether recovery may be barred by a statute of limitations or the indebtedness becomes invalid or otherwise unenforceable." (SOF ¶ 13).

As confirmed in the First Amendment to the Loan Agreement dated July 18, 2025, the outstanding principal balance of the Loan was $98,643,500.00, which constitutes "Credit" within the meaning of the Guaranties. (SOF ¶ 14).

Marcil unconditionally guaranteed five percent (5%) of the Credit, as it may change from time to time, and Stupin unconditionally guaranteed forty-five percent (45%) of the Credit, as it may change from time to time, together with the obligation "to otherwise perform any obligations of Borrower undertaken pursuant to any Credit." (SOF ¶ 15). Each Guaranty is expressly a "guaranty of payment and not of collection." (SOF ¶ 16).

Critically, the Guaranties impose separate, independent liability for "Additional Guaranteed Obligations," which are not subject to any percentage limitation. (SOF ¶ 17). "Additional Guaranteed Obligations" are defined to include "any and all debts, obligations, liabilities, claims, . . . damages, losses, [or] costs" arising from, among other things:

- fraud or intentional misrepresentation by Borrower in connection with the Loan or Loan Documents;
- misappropriation or improper application of collections or collateral proceeds;
- failure to deliver or maintain valid security interests in collateral;
- concealment of foreclosures, bankruptcies, or adverse proceedings; or
- willful misconduct or violations of law affecting collateral.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

(SOF ¶ 17).

The Guaranties further provide that the Guarantors' obligations are absolute, unconditional, joint and several, and independent of Borrower's obligations, and may be enforced without first proceeding against Borrower, collateral, or any other guarantor. (SOF ¶ 18). Each Guarantor expressly and irrevocably waived any and all rights, defenses, and protections afforded to guarantors and sureties under California Civil Code sections 2787 through 2855, including, without limitation, all suretyship defenses; all rights of subrogation, reimbursement, contribution, or indemnity; and any defenses arising from the impairment, release, or disposition of collateral, whether caused by Borrower's conduct or otherwise. (SOF ¶ 19).

Consistent with that structure, each Guaranty is designated as a continuing guaranty, surviving amendments, waivers, and enforcement actions, and expressly covering obligations reaffirmed in the First Amendment. (SOF ¶ 20). Each Guarantor further agreed to pay all attorneys' fees, costs, and expenses incurred in enforcing the Loan Documents and the Guaranties, including those incurred as a result of Borrower's fraud. (SOF ¶ 21).

The guaranty arrangements were negotiated and reinforced by related agreements allocating and backstopping guaranty exposure. In January 2018, Borrower and Marcil executed a Guaranty Covenant and Compensation Agreement acknowledging that Plaintiff required Marcil to provide a continuing guaranty as a condition of the credit line, and providing for Borrower's indemnification of Marcil for liabilities arising from Borrower's breach or default—further confirming these were deliberate, formal undertakings among sophisticated parties, not the product of misunderstanding or surprise. (SOF ¶¶ 22–24).

Guarantor Stupin likewise participated in the allocation and management of guaranty risk. In September 2017, Stupin and Marcil (including the Marcil Family Trust) executed a Payment Guarantee Agreement that expressly contemplated Marcil's "Continuing Guaranty" and the parties' efforts to address and manage that exposure. (SOF ¶ 25). These contemporaneous agreements confirm that the Guarantors were not misled about the existence or seriousness of their guaranty obligations; they were actively structuring indemnity and backstop arrangements in connection with lender-required guaranties. (SOF ¶ 26).

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**C.** **Borrower's Fraud, Misappropriation, and Collateral-Impairment Conduct Triggers the Guarantors' "Additional Guaranteed Obligations"**

After the Loan closed, Borrower repeatedly represented that Plaintiff held a valid, perfected first-priority lien on each real property securing each Collateral Loan pledged to Plaintiff under the Loan Agreement (each, a "Collateral Property") and that no adverse proceedings affected the pledged collateral. Those representations were false when made and were maintained through affirmative concealment and fabricated documentation.

1. Borrower supplied altered title policies falsely showing first-priority liens.

Between August 2024 and April 2025, Borrower furnished title insurance policies purporting to insure Plaintiff's lien position as first priority on multiple Collateral Properties. (SOF ¶ 27). Those submissions were made in response to Borrower's contractual obligation to deliver final title insurance confirming first-priority status. (SOF ¶ 28).

When Plaintiff later attempted to obtain routine collateral information, including appraisals, it encountered unexplained delays. (SOF ¶ 29). Independent owner-record searches revealed that Plaintiff was not in first position on at least eleven Collateral Properties. (SOF ¶ 30). Borrower responded by assuring Plaintiff that the discrepancies were temporary and would be cured through lien releases or subordinations within 60 to 90 days. (SOF ¶ 31). No such releases or subordinations were provided. (SOF ¶ 32).

In January 2025, Borrower's relationship lead Mahender Makhijani represented that the lien issues had been resolved but again failed to produce confirming documentation despite an on-site visit and repeated follow-up requests. (SOF ¶ 33). Instead, on April 3, 2025, Borrower supplied additional title policies for several Collateral Loans that again purported to show Plaintiff in first position. (SOF ¶ 34).

When Plaintiff obtained title policies directly from the issuing title companies on August 14, 2025, those insurer-issued policies showed that Plaintiff was not in first-lien position on ten of fourteen Collateral Loans and disclosed senior defaults and pending foreclosure activity affecting multiple properties. (SOF ¶ 35). Those insurer-issued policies cover the same properties, loan

5

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

numbers, legal descriptions, and policy numbers as the title policies previously supplied by Borrower, but reflect materially different lien positions. (SOF ¶ 36).

A forensic comparison of the title policies supplied by Borrower with the insurer-issued policies revealed multiple indicators of document manipulation, including omitted lien entries, inconsistent formatting, altered ordering of recorded instruments, and internal inconsistencies within the same policy. As explained by Plaintiff's forensic fraud expert, Eric Lee, CPA, a managing director specializing in forensic accounting and financial fraud analysis in secured lending transactions, these anomalies are inconsistent with authentic title company records and are indicative of altered or manipulated documents rather than clerical error. (SOF ¶ 37). Mr. Lee further explains that the Borrower-provided title policies were knowingly submitted by Borrower representatives and exhibit structural and formatting characteristics commonly associated with intentional misrepresentation of lien priority. (SOF ¶ 38). The Borrower-provided (doctored) title reports are summarized in the following table (SOF ¶ 27):

| COLLATERAL PROPERTY | TITLE POLICY PROVIDED BY BORROWER | TITLE POLICY DIRECT FROM TITLE COMPANY |
| --- | --- | --- |
| No. 26: 2522 S. Grove Ave., Ontario, CA | Plaintiff's $16,500,000.00 lien as first in line. | First lien holder is purportedly Preferred Bank with a deed of trust of $10,400,000.00. |
| No. 32: 23750 Alessandro Blvd, Building G, H, I, Moreno Valley, CA | Plaintiff is first lien holder with lien of $7,750,000.00 | Nano Banc is first lien holder with a deed of trust of $9,720,000.00. |
| No. 33: 23750 Alessandro Blvd, Building A, B, O, N, Moreno Valley, CA | Plaintiff is first lien holder with lien of $6,500,000. | Nano Banc is first lien holder with a lien of $9,720,000.00 and Nano Banc noticed default and an election to sell the property. |
| No. 35: 2460 S. Grove Ave, Ontario, CA | Plaintiff's lien of $2,900,000.00 is first priority. | Preferred Bank is first lien holder with a deed of trust of $10,400,000.00. |
| No. 37: 28207 Newhall Ranch Road, Valencia, CA | Plaintiff is first lien holder. | There are two deeds of trust for Preferred Bank secured before Plaintiff: one for $48,930,000.00 and a second for $1,500,000.00. |
| No. 38: 28251 Newhall Ranch Road, Valencia, CA | Plaintiff is first priority lien holder | Two deeds of trust for Preferred Bank hold the first and second lien positions: one for $48,930,000.00 and the second for $1,500,000.00. |

6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

| COLLATERAL PROPERTY | TITLE POLICY PROVIDED BY BORROWER | TITLE POLICY DIRECT FROM TITLE COMPANY |
|---|---|---|
| No. 39: 28301 Newhall Ranch Road, Valencia, CA | Plaintiff is first priority lien holder | Two deeds of trust for Preferred Bank hold the first and second lien positions: one for $48,930,000.00 and the second for $1,500,000.00. |
| No. 43: 3700 Inland Empire Blvd., Ontario, CA | Plaintiff's first lien holder and no other liens are referenced. | Two deeds of trust are in first and second lien positions, one for Preferred Bank for $25,900,000.00 dated March 30, 2022 and the second is for Nano Banc for $4,333,151.35 dated November 10, 2022. Nano Banc noticed default and an election to sell the property. |
| No. 44: 12125 Central Ave, Chino, CA | Plaintiff is first lien holder and no other liens are referenced. | Two deeds of trust are in first and second lien positions, one for Preferred Bank for $22,400,000.00 dated August 4, 2016 and the second for Nano Banc for $5,990,000.00. |
| No. 45: 9826 Cedar St, Bellflower, CA | Plaintiff is first lien holder and no other liens are referenced. | Two deeds of trust are in first and second lien positions, one for Umpqua Bank for $6,470,000.00 dated November 6, 2018 and the second for Nano Banc for $8,000,000.00. |

Borrower has never produced corrected insurer-issued title policies, endorsements, or written correspondence from the issuing title companies contradicting the authentic records obtained by Plaintiff. (SOF ¶ 39).

2.    Borrower concealed foreclosure and bankruptcy proceedings while reaffirming "no proceeding" representations.

At the same time Borrower was providing title materials purporting to show Plaintiff in first position, senior lienholders had recorded notices of default and elections to sell against multiple Collateral Properties. (SOF ¶ 40). By May 2025, at least four such foreclosure proceedings were pending. (SOF ¶ 41). None of those proceedings were disclosed to Plaintiff, despite Borrower's continuing representations that no actions, suits, foreclosures, or other proceedings existed that could affect the collateral or Borrower's obligations. (SOF ¶¶ 5, 6).

Borrower also concealed a bankruptcy proceeding that directly contradicted its ownership representations. The owner of the Collateral Property with the address 1020 Bismark Way, Oxnard,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

7

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

filed Chapter 11 on March 11, 2025 (*In re Global Premier Regency Palms Oxnard, LP*, Case No. 9:25-bk-10329-RC (C.D. Cal. Bankr.)), listing a different entity as a secured lender when Borrower had pledged that Collateral Loan to Plaintiff. (SOF ¶ 42). Specifically, Jaspreet Sethi—the same individual who provided the doctored title policies to Plaintiff on behalf of Borrower—asserted under oath in May 2025 that JKO Group, LLC and Blackhawk Solar, LLC have "physical possession of a promissory note" for the 1020 Bismark Way property:

**Movant:** JKO Group, LLC and Blackhawk Solar, LLC

3. The Movant is:

a. ☒   Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 3_____.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

05/13/2025            Jaspreet Sethi
Date                         Printed name                                                          Signature

(SOF ¶ 43).

Mr. Sethi's sworn statement is irreconcilable with Borrower's own Lost Note Affidavit provided to Plaintiff nine months earlier. In August 2024, Borrower affirmed under oath that it "is the true and lawful holder and owner of the Note and the Note has not been modified, deposited, pledged, sold, delivered, transferred, assigned, paid in full, or otherwise dealt with in any manner which could affect [Borrower's] absolute title thereto." (SOF ¶ 44).

These sworn statements are mutually exclusive. Either Borrower remained the sole owner and holder of the note pledged to Plaintiff, as represented in the Lost Note Affidavit, or JKO Group, LLC and Blackhawk Solar, LLC held physical possession of the note in May 2025, as Mr. Sethi later testified under oath. Both cannot be true. Mr. Lee identifies Borrower's absence as a secured creditor in bankruptcy filings for pledged Collateral Loans as a further indicator of fraud or, at minimum, a failure to maintain enforceable collateral rights. (SOF ¶ 45). The contradiction confirms

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

that Borrower's ownership and pledge representations to Plaintiff were false when made or were later affirmatively repudiated.

### 3. Borrower diverted and misappropriated collateral-related proceeds.

Under Section 6.18.4 of the Loan Agreement, Borrower was obligated to maintain an average monthly balance of $2,000,000.00 in its operating account and, upon default, was prohibited from withdrawing or using those funds. (SOF ¶ 46). By August 15, 2025, the balance had been depleted to just $1,009.47. (SOF ¶ 47). Records show Borrower diverted these funds to pay legal fees defending against foreclosure actions directly impacting Plaintiff's collateral. (SOF ¶ 48). This misappropriation and failure to maintain the account balance breaches the Loan Agreement and extinguishes a critical source of collateral security.

### 4. Borrower falsely certified compliance while withholding required financial, collateral, and loan-level information.

While superior liens, foreclosure proceedings, and ownership conflicts affecting the Collateral Loans existed, Borrower repeatedly and affirmatively certified compliance with the Loan Documents. Most notably, on June 11, 2025, Borrower executed and delivered a Borrowing Base Certificate certifying that (i) the outstanding facility balance was $98,643,500.00, (ii) no Default or Event of Default existed, and (iii) all representations and warranties under the Loan Documents were true and correct in all material respects. (SOF ¶ 49).

Those certifications were false when made and when the Certificate became operative on July 18, 2025. As set forth above, by June 2025 Borrower had already failed to deliver valid first-priority collateral, concealed superior liens and foreclosure activity, diverted required liquidity, and withheld information necessary to verify collateral integrity. Borrower's execution of the June 11, 2025 Borrowing Base Certificate therefore constitutes an independent material misrepresentation and an Event of Default under the Loan Agreement, for which no cure period applies. (SOF ¶ 7).

At the same time Borrower was falsely certifying compliance, it was actively withholding the very information and account controls the Loan Documents required to permit Plaintiff to monitor collateral and protect its security interests.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

First, Borrower never established the "WAB Capital Account" required in Loan Agreement sections 6.18.8 and 6.18.9 through which all proceeds of the Collateral Loans and the underlying properties were required to flow, constituting an Event of Default. (SOF ¶¶ 5, 11, 50).

Second, Borrower failed to provide required financial statements and borrowing base information. (SOF ¶ 51). The Loan Agreement obligated Borrower to deliver quarterly financial statements and borrowing base certificates within 30 days after each quarter-end beginning September 30, 2024. (SOF ¶ 51). After certifying compliance in June 2025, Borrower stopped providing financials and Borrowing Base Certificates altogether. (SOF ¶ 52). Plaintiff demanded the missing information on July 29, 2025, but Borrower refused to comply. (SOF ¶ 52). Borrower's June 30, 2025 financial statements (due July 30) remain outstanding despite Plaintiff's follow-up demand on August 5, 2025. (SOF ¶ 53). Borrower has also failed to provide any of the monthly Borrowing Base Certificates required under Section 6.7.8 of the Loan Agreement. (SOF ¶ 53).

Third, Borrower refused to provide required loan-level "loan tape" information. Schedule 6.7 required Borrower to deliver a complete loan tape—i.e., the loan-level data and supporting documentation for each Collateral Loan necessary to verify collateral status and performance—within 30 days after each quarter-end beginning September 30, 2024. (SOF ¶¶ 51, 54). Borrower has not delivered any such loan tape despite repeated requests. (SOF ¶ 54).

Finally, Borrower failed to satisfy post-closing delivery conditions imposed by the July 18, 2025 First Amendment. Section 12 of the First Amendment required Borrower, by August 17, 2025, to deliver specified collateral loan documents, satisfactory proof of payment of delinquent property taxes, and other enumerated items. Borrower delivered none of the required materials, constituting an immediate default under the Loan Documents. (SOF ¶ 55).

In short, Borrower certified compliance while simultaneously withholding the very information and account controls that would have revealed the true condition of the collateral. That conduct deprived Plaintiff of its contractual monitoring rights at the same time superior liens, foreclosures, and ownership conflicts were impairing Plaintiff's security interests.

     5.    <u>Borrower failed to make required monthly debt service payments.</u>

The Loan Agreement requires Borrower to timely pay all principal and interest due under

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

---

10

the Note. (SOF ¶ 56). The Note obligates Borrower to make monthly debt service payments beginning November 10, 2024 and continuing on the 10th day of each month until maturity in May 2026. (SOF ¶ 56). The Loan Agreement provides a five-business-day grace period for such payments. (SOF ¶ 57).

Borrower's September 2025 monthly payment in the amount of $1,216,198.28 was due on September 10, 2025. The contractual grace period expired on September 17, 2025, without payment, and Borrower has not made any payments under the Loan Agreement and Note since August 2025. (SOF ¶ 59). On September 19, 2025, Plaintiff served Defendants' counsel with a written Notice of Default stating that Borrower had failed to make the required monthly payment and had missed the grace period. (SOF ¶ 60). Borrower did not cure the payment default and failed to make the required monthly debt service payments due in October, November, and December 2025, each of which became due under the Note and expired after the applicable grace period without payment, and as of the filing of this Motion, Borrower has made no monthly debt service payments since August 2025. (SOF ¶ 61).

6.    <u>Guarantors Had Notice of Borrower's Defaults and Acknowledged Their Continuing Guaranty Obligations.</u>

Throughout the Loan, Defendants Marcil and Stupin received repeated written notice of Borrower's defaults and collateral deficiencies and engaged in related communications. Plaintiff issued multiple Reservation of Rights letters identifying document deficiencies and remargin demands in December 2024, January 2025, and February 2025, which were sent to the Guarantors. (SOF ¶¶ 62–63).

Plaintiff also sent the Guarantors a pre-negotiation letter regarding Borrower's defaults on March 10, 2025, which Defendants Marcil and Stupin executed, and both Guarantors thereafter participated in meetings and communications concerning remargin requirements, document deficiencies, and potential restructuring or term-out of the Loan. (SOF ¶¶ 64–65). Plaintiff issued additional notices of default in June and August 2025. (SOF ¶ 66).

The parties executed the First Amendment to the Loan Agreement on July 18, 2025, including execution by the Guarantors, and Plaintiff continued to provide written notice of ongoing

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

defaults thereafter. (SOF ¶¶ 10, 66). Despite these notices and communications, neither Guarantor took any action to cure Borrower's defaults, prevent further collateral impairment, or address the identified violations. (SOF ¶ 67).

> 7. <u>The Court Appoints a Receiver Over the Collateral Loans Based on Borrower's Defaults.</u>

On November 14, 2025, after a noticed hearing, the Court entered an Order Appointing Receiver After Hearing and Preliminary Injunction, appointing an independent receiver to take possession of and manage all property related to Borrower's $98,643,500.00 loan from Plaintiff, including the Collateral Loans. (SOF ¶¶ 68–69). The Receivership Property includes the Collateral Loans pledged under the Loan Agreement, and the Order authorizes the receiver to take control of related records and accounts, administer and service the loans, collect and control proceeds, and—with Plaintiff's approval—pursue enforcement or sale of the collateral. (SOF ¶¶ 70–71). The Court appointed the receiver upon finding Borrower in material default and determining that immediate intervention was necessary to preserve the collateral and protect Plaintiff's interests. (SOF ¶ 72).

## III.   LEGAL STANDARD

Summary adjudication is proper where the evidence shows no triable issue of material fact and the moving party is entitled to judgment as a matter of law, and it completely disposes of a cause of action. (CCP § 437c(c), (f)(1)). Where contract language is clear, interpretation and legal effect are questions of law. (*Goldstein v. Hoffman* (1963) 213 Cal.App.2d 803, 813).

## IV.   THE UNDISPUTED MATERIAL FACTS ESTABLISH PLAINTIFF'S ENTITLEMENT TO SUMMARY ADJUDICATION FOR BREACH OF CONTRACT AND BREACH OF GUARANTY.

The requisite elements for a prima facie showing of breach of contract are (1) existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom. (*See Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal. App. 4th 1171, 1178.) A valid contract based on consideration is presumed when the contract is reduced to writing. (*See* Cal. Civ. Code § 1614).  In addition, consideration for the Guaranty exists because the benefit conferred in exchange for the Guaranty was the contemporaneous funding of the loan to Borrower. (*Beverly Hills Nat'l Bank v. Glynn* (1968) 267 Cal. App. 2d 859, 867

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

("Admittedly, the guaranty is not enforceable unless it was given for some consideration. Such consideration may either be the contemporaneous or subsequent loaning of money, or the forbearance to collect on an obligation previously incurred." (citations omitted))).

**A.**   **Borrower Materially Breached the Loan Documents, Resulting in Defaults and Damages.**

There is no dispute that Borrower entered into the Loan Agreement, drew the credit facility, and remains obligated on an outstanding principal balance of $98,643,500.00. (SOF ¶ 2). There is likewise no triable issue that Borrower then violated the Loan Documents in multiple independent, material ways (each of which constitutes a breach and Event of Default) while Plaintiff's exposure grew and Plaintiff's collateral position deteriorated.

1.    Borrower's material misrepresentations and non-disclosures are breaches and Events of Default with no cure period.

The Loan Agreement provides that any "material misrepresentation or failure to disclose a material fact" constitutes a breach and Event of Default for which Borrower "shall not be entitled to a time period to cure." (SOF ¶ 5). That provision is triggered here. Borrower delivered title policies purporting to show Plaintiff as a first-priority lienholder, but insurer-issued policies obtained directly from the title companies show Plaintiff in a junior position on most of the portfolio and disclose superior liens and foreclosure activity Borrower never revealed. (SOF ¶¶ 27, 30, 35–36, 39–41). Borrower has produced no corrected insurer-issued policies, endorsements, or written insurer communications contradicting those records. (SOF ¶¶ 35–36, 39). These were not minor inaccuracies; they are precisely the type of material misrepresentations and omissions the Loan Agreement defines as incurable Events of Default. (SOF ¶ 5).

The Loan Agreement does not treat lien-priority and collateral-integrity representations as aspirational covenants. It expressly provides that if Borrower "has made material misrepresentations or failed to disclose any material fact," Lender "may treat such misrepresentation or omission as a breach of this Agreement" and Borrower "shall not be entitled to a time period to cure any such default." (SOF ¶ 5). This "no-cure" allocation is consistent with the credit facility's structure: the bargain is that Lender funds against collateral only so long as Borrower's collateral representations

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

13

remain true and complete; once those inducement representations are materially false or incomplete, the contractual condition for continued funding and forbearance fails as a matter of contract.

Nor does any alleged prior awareness of potential title issues negate default or guaranty liability. The Loan Agreement defines the making or continuation of materially false or misleading representations and certifications as an immediate Event of Default without regard to lender reliance, and the undisputed record shows that (even after discrepancies were raised) Borrower repeatedly reaffirmed first-lien status through fabricated title submissions, express assurances of imminent cure, and a June 11, 2025 Borrowing Base Certificate certifying that no Default or Event of Default existed. (SOF ¶¶ 5–7, 31–34, 49).

Borrower compounded the breach by concealing adverse proceedings while continuing to reaffirm "no proceeding" representations. By May 2025, multiple superior-lien foreclosure actions were pending against Collateral Properties. (SOF ¶¶ 40, 41). And Borrower concealed a bankruptcy proceeding directly inconsistent with its ownership and pledge representations, including sworn testimony indicating third parties "have physical possession" of a promissory note that Borrower had pledged to Plaintiff. (SOF ¶¶ 42–44). Those facts independently establish material misrepresentation and non-disclosure.

And even apart from Section 7.11, the Loan Agreement separately provides that any materially false or misleading warranty or representation constitutes an Event of Default, and expressly provides that Borrower "shall not be entitled to a time period to cure" such a default. (SOF ¶¶ 7, 9). Thus, Borrower's misstatements and omissions independently establish (i) breach, (ii) Event of Default, and (iii) immediate enforcement rights under the Loan Documents, without any contractual entitlement to additional notice-and-cure opportunities.

> 2.   <u>Borrower breached fundamental proceeds-control and reporting covenants that exist to protect collateral integrity.</u>

Even while certifying that no Default or Event of Default existed, Borrower failed to implement the core account and reporting controls required by the Loan Documents to protect Plaintiff, including by never establishing the required lender-controlled capital account. Borrower executed a Borrowing Base Certificate dated June 11, 2025 certifying performance and compliance.

14

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(SOF ¶¶ 46, 47, 49–50, 52–54). Yet Borrower never established the required "WAB Capital Account" through which collateral proceeds were required to flow. (SOF ¶ 50).

Borrower also stopped providing required quarterly financial statements and borrowing base documentation, despite express quarterly and monthly reporting obligations. (SOF ¶¶ 51–53). Plaintiff demanded the missing information beginning July 29, 2025 and again on August 5, 2025, but Borrower refused; June 30, 2025 financials remain outstanding, and monthly Borrowing Base Certificates required under the Loan Agreement were not provided. (SOF ¶¶ 52, 53).

In the same vein, Borrower failed to provide the required loan-level "loan tape," meaning a complete, loan-by-loan portfolio report identifying each Collateral Loan and its material terms, performance status, and supporting documentation. The Loan Agreement required Borrower to deliver this loan tape within thirty (30) days after the end of each fiscal quarter, beginning September 30, 2024. (SOF ¶¶ 51, 54). Borrower did not provide the required loan tape despite repeated requests. (SOF ¶¶ 52, 54).

Finally, Borrower failed to satisfy the post-closing delivery conditions imposed by the July 18, 2025 First Amendment, including delivery of specified collateral-loan documents and proof of payment of delinquent property taxes by August 17, 2025. (SOF ¶ 55).

These reporting and proceeds-control duties are independently enforceable obligations under the Loan Agreement's default framework. The Loan Agreement defines an Event of Default to include Borrower's failure "to perform or observe any term, covenant, or agreement" contained in the Loan Agreement or any other Loan Document, subject only to the cure periods expressly provided in the Agreement or in the specific default provision at issue. (SOF ¶ 7).

Here, Borrower failed to establish and maintain required proceeds-control accounts and failed to deliver mandatory financial statements, borrowing base certificates, and loan-level reporting, all of which are affirmative covenants under the Loan Agreement. (SOF ¶¶ 11, 50–54). Plaintiff provided written notice of these covenant breaches and demanded compliance, but Borrower failed to cure the defaults within the applicable contractual cure periods, or at all. (SOF ¶¶ 7, 60–62, 66–67).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

15

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Those uncured failures therefore constitute independent Events of Default under § 7.1, separate from (and in addition to) Borrower's misrepresentations. Each such Event of Default independently supports acceleration of the Loan and enforcement of Lender's contractual remedies. (SOF ¶¶ 7–9, 50–55).

3.      Borrower diverted collateral-related funds and depleted required liquidity, further impairing Plaintiff's security.

The Loan Agreement required Borrower to maintain minimum liquidity in its operating account, and restricted withdrawals upon default. (SOF ¶ 46). Instead, Borrower's required operating balance collapsed from the required average monthly balance of $2,000,000.00 to just $1,009.47 by August 18, 2025. (SOF ¶¶ 46, 47). Borrower was provided written notice of its failure to maintain the required operating balance and afforded any cure period applicable under the Loan Documents, but failed to restore compliance. (SOF ¶¶ 7, 46–47, 60, 62, 66–67). Borrower's failure to maintain the required liquidity and its diversion of those funds constitute a further Event of Default under the Loan Agreement, independently entitling Plaintiff to accelerate the Loan and to exercise its contractual remedies. (SOF ¶¶ 7–9, 46–48).

4.      Borrower failed to make required monthly debt service payments, resulting in continuing payment default.

The Note's monthly payment obligation is enforced through the Loan Agreement's Event-of-Default framework. The Loan Agreement provides that Borrower's failure to pay any regularly scheduled installment of principal or interest when due, after expiration of the five-business-day grace period, constitutes an Event of Default. (SOF ¶¶ 7, 56–57). Upon the occurrence and continuation of that payment default, Plaintiff's contractual remedies were triggered under the Loan Documents, independent of any other covenant breaches, and each successive missed monthly payment constitutes a continuing Event of Default. (SOF ¶¶ 7–8, 58–59, 61).

Borrower failed to make the September 10, 2025 monthly payment of $1,216,198.28, and the grace period expired on September 17, 2025 without payment. (SOF ¶¶ 58–59). Plaintiff served written notice of default on September 19, 2025. (SOF ¶ 60). Borrower did not cure. (SOF ¶ 61).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

16

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Borrower thereafter failed to make the required monthly debt service payments due in October, November, and December 2025 as well. (SOF ¶ 61). As of the filing of this Motion, Borrower has made no monthly debt service payments since August 2025. (SOF ¶ 61). These uncured and continuing payment defaults entitle Plaintiff, at its option, to accelerate all outstanding obligations under the Loan Documents and declare the entire indebtedness immediately due and payable. (SOF ¶¶ 8–9, 58–59, 61).

5. <u>These breaches caused ongoing harm and entitle Plaintiff to judgment on its contract claim.</u>

Borrower's breaches and Events of Default have left Plaintiff exposed for $98,643,500.00 against collateral that is burdened by senior liens and active foreclosure activity, while Borrower withholds the portfolio information and proceeds controls needed to protect the collateral and enforce the Loan Documents. (SOF ¶¶ 14, 27, 30, 35–36, 40–41, 46–48, 50, 52–55). Plaintiff is therefore entitled to summary adjudication that Borrower is liable for breach of contract, and that Plaintiff's recoverable contract damages include the unpaid principal of $98,643,500.00 plus accrued and accruing contractual interest calculated under the Note, together with contractually authorized attorneys' fees and costs. (SOF ¶¶ 7–9, 14, 21, 56–61).

**B.    The Guarantors Are Liable for Borrower's Defaults and for the Uncapped "Additional Guaranteed Obligations" Triggered by Borrower's Fraud and Misconduct.**

A party is entitled to judgment on a breach of guaranty claim based upon undisputed evidence that (1) there is a valid guaranty, (2) a party has defaulted, and (3) the guarantor failed to perform under the guaranty. (*Gray1 CPB LLC v. Kolokotronis* (2011) 202 Cal. App. 4th 480, 486). Here, there is no triable issue as to the Guarantors' liability. The Guaranties are written, enforceable contracts. They are guaranties of payment (not collection), impose independent obligations, and expressly extend to both (i) a percentage share of the "Credit" and (ii) separate, uncapped "Additional Guaranteed Obligations" triggered by exactly the type of conduct the record establishes here.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

1. <u>The Guaranties obligate Guarantors to pay on demand, independent of Plaintiff's pursuit of Borrower or collateral.</u>

Each Guaranty provides that the Guarantor "unconditionally guarantees and agrees to pay to Lender, on demand," an amount equal to the applicable percentage of the Credit, plus "the Additional Guaranteed Obligations," plus enforcement fees and costs. (SOF ¶¶ 15–17, 21). It also states: "This Guaranty is a guaranty of payment and not of collection." (SOF ¶ 16).

The Guaranties further provide that Guarantors' obligations "are not contingent upon and are independent of the obligations of Borrower," and that Plaintiff may bring "a separate action" against a Guarantor "whether action is brought against Borrower" or others. (SOF ¶ 18).

Accordingly, once Borrower defaulted under the Loan Documents, including by failing to make required monthly payments and committing Events of Default, Plaintiff was contractually entitled to enforce the Guaranties directly against the Guarantors as written. (SOF ¶¶ 7–8, 15–16, 18, 58–59, 61). This structure is critical for summary adjudication because the Guaranties eliminate sequencing, exhaustion, and collection defenses by imposing unconditional payment liability that is independent of any foreclosure, receivership proceedings, or prior enforcement against Borrower or the collateral. Upon Borrower's default and the establishment of the amount due under the Loan Documents, the Guaranties permit immediate and direct enforcement against the Guarantors without any further preconditions.

2. <u>Borrower's payment and covenant defaults trigger the Guarantors' percentage liability for the "Credit."</u>

The undisputed record establishes continuing payment defaults under the Note and Loan Agreement, including the failure to make the required monthly debt service payments due in September, October, November, and December 2025. (SOF ¶¶ 58–59, 61). Those payment defaults constitute Events of Default under the Loan Documents and trigger the Guaranties' percentage-based payment obligations for the "Credit." (SOF ¶¶ 7–8, 13, 15, 58–59, 61).

Under the express terms of the Guaranties, Marcil is unconditionally liable for five percent (5%) of the Credit, and Stupin is unconditionally liable for forty-five percent (45%) of the Credit, in each case as the Credit exists from time to time and without regard to any action against Borrower

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

or the collateral. (SOF ¶ 15, 16, 18). Because the outstanding Credit includes the $98,643,500.00 principal balance acknowledged in the Loan Documents, these defaults establish, as a matter of law, Defendant Marcil's minimum liability of $4,932,175.00 (five percent of $98,643,500.00) and Defendant Stupin's minimum liability of $44,389,575.00 (forty-five percent of $98,643,500.00), subject to further calculation of accrued interest, fees, costs, and any additional amounts owed under the Loan Documents and Guaranties.

> 3. <u>Borrower's fraud, misappropriation, and collateral-impairment conduct triggers the Guarantors' uncapped "Additional Guaranteed Obligations."</u>

Independently (and critically) the undisputed evidence shows that the "Additional Guaranteed Obligations" have been triggered:

- **Fraud / intentional misrepresentation**: Borrower delivered title policies purporting to place Plaintiff in first position, while insurer-issued versions obtained directly from the title companies show Plaintiff in junior position and identify superior liens and foreclosure activity. (SOF ¶¶ 27, 35–36, 40–41). Borrower also withheld foreclosure and bankruptcy proceedings while continuing to reaffirm "no proceeding" representations. (SOF ¶¶ 40–44).

- **Misappropriation / improper application of amounts**: Borrower depleted required liquidity and diverted funds, including to pay legal fees defending foreclosures affecting Plaintiff's collateral. (SOF ¶¶ 46–48).

- **Failure to deliver / grant valid security interest**: The insurer-issued title policies identify superior deeds of trust in favor of third-party lenders on the very collateral pledged as "first lien" security, confirming the failure to provide the first-priority collateral position the Loan Documents required. (SOF ¶¶ 4–5, 27, 35–36).

Because this conduct falls squarely within the Guaranties' enumerated triggers, the Guarantors are liable not only for their percentage share of the Credit, but also for all "Additional Guaranteed Obligations" actually incurred by Plaintiff, including losses and costs arising from fraud, misappropriation of collateral-related proceeds, and failure to deliver or maintain valid first-priority security interests. (SOF ¶¶ 15, 17, 27, 35–36, 40–41, 44, 48).

> 4. <u>The Guaranties are enforceable as written, and the Guarantors' obligations are absolute, independent, and subject to comprehensive waiver.</u>

California courts enforce guaranty agreements according to their plain terms and do not rewrite them based on equitable considerations. (*Series AGI W. Linn of Appian Grp. Investors DE,*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

19

*LLC v. Eves* (2013) 217 Cal. App. 4th 156, 163 ("A guaranty is a form of contract and subject to the usual rules governing contract interpretation."); Cal. Civ. Code §§ 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."), 1644 ("The words of a contract are to be understood in their ordinary and popular sense . . . ."). "[C]ourts will not rewrite contracts to relieve parties from bad deals nor make better deals for parties than they negotiated for themselves." (*Series AGI*, 217 Cal. App. 4th at 163 (citations omitted)).

The Guaranties impose unconditional, independent obligations enforceable immediately upon Borrower's default, without notice, demand, exhaustion of remedies, or prior pursuit of Borrower or the collateral. (SOF ¶¶ 15–16, 18). They also contain express waivers of defenses based on notice, presentment, election of remedies, impairment of collateral, or enforcement sequencing. (SOF ¶ 19). Although Plaintiff provided the Guarantors notice of defaults and engaged in restructuring discussions, such notice and participation are not prerequisites to enforcement under the Guaranties and merely confirm that Plaintiff acted consistently with the contractual framework the parties adopted. (SOF ¶¶ 10, 16, 18–19, 62–66).

Because the Guaranties eliminate notice, exhaustion, and impairment defenses, and because Borrower's defaults and misconduct undisputedly triggered both the payment guaranty and the Additional Guaranteed Obligations, Plaintiff is entitled to summary adjudication on its breach of guaranty claim, including uncapped liability for losses arising from Borrower's fraudulent and collateral-impairing conduct.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff requests entry of summary adjudication against Defendants for the unpaid principal balance of $98,643,500.00 and accrued and accruing contractual interest under the Note.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

DATED:  December 24, 2025

**BALLARD SPAHR LLP**

By:    */s/ Mitchell L. Turbenson*
Craig Solomon Ganz
Michael S. Myers
Elliot G. Johnson
Mitchell L. Turbenson

*Attorneys for Plaintiff*
*Western Alliance Bank*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

**<u>PROOF OF SERVICE</u>**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is **BALLARD SPAHR LLP**, 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915. On December 24, 2025, I served the within documents: **PLAINTIFF WESTERN ALLIANCE BANK'S NOTICE AND MOTION FOR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

☐    **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. and no error was reported.

☑    **BY E-MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported. Said electronic mail transmission(s) were directed as indicated on the service list.

☐    **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐    **BY HAND:** I caused such document(s) to be delivered by hand to the addressee(s).

*SEE ATTACHED SERVICE LIST*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 24, 2025, at Los Angeles, California.

*Eric J. Garcia*
Eric J. Garcia

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone: 424.204.4400

#4915-9508-2871 v1

PROOF OF SERVICE

# SERVICE LIST

Larry A. Rothstein
**LARLAW, A PROFESSIONAL LAW CORPORATION**
2625 Townsgate Rd., Suite 330
Westlake Village, CA 91361

*Attorneys for Defendant Cantor Group V, LLC*
Tel.:       (818) 348-7000
Fax:       (818) 348-0700
Email:     lar@larlaw.net

Steven T. Gubner
**BG LAW LLP**
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

*Attorneys for Defendant Gerald J. Marcil*
Tel.:       (818) 827-9000
Fax:       (818) 827-9099
Email:     sgubner@bg.law

David B. Golubchik
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave.
Los Angeles, CA 90034

*Attorneys for Defendant Andrew Stupin*
Tel.:       (310) 229-1234
Fax:       (310) 229-1244
Email:     dbg@lnbyg.com

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

#4915-9508-2871 v1

PROOF OF SERVICE

# Journal Technologies Court Portal

# Make a Reservation

WESTERN ALLIANCE BANK, AN ARIZONA CORPORATION vs CANTOR GROUP V, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, et al.

Case Number: 25STCV24263   Case Type: Civil Unlimited   Category: Contractual Fraud
Date Filed: 2025-08-18   Location: Stanley Mosk Courthouse - Department 14

## Reservation

| | |
|---|---|
| Case Name:<br>WESTERN ALLIANCE BANK, AN ARIZONA CORPORATION vs CANTOR GROUP V, LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al. | Case Number:<br>25STCV24263 |
| Type:<br>Motion for Summary Adjudication | Status:<br>RESERVED |
| Filing Party:<br>Western Alliance Bank (Plaintiff) | Location:<br>Stanley Mosk Courthouse - Department 14 |
| Date/Time:<br>04/20/2026 8:30 AM | Number of Motions:<br>1 |
| Reservation ID:<br>379684533426 | Confirmation Code:<br>CR-XYKK8KUVNYTVUXVRF |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion for Summary Adjudication | 0.00 | 1 | 0.00 |
| TOTAL | | | $0.00 |

## Payment

| | |
|---|---|
| Amount:<br>$0.00 | Type:<br>NOFEE |
| Account Number:<br>n/a | Authorization:<br>n/a |
| Payment Date:<br>n/a | |

🖶 Print Receipt     ✚ Reserve Another Hearing     👤 View My Reservations